Russell Gr. Hunt, J.
This is a claim to recover damages arising out of the claimant’s alleged unlawful detention and confinement at Rockland State Hospital for the insane pursuant to an order made on July 24, 1953, at a Special Term of the Supreme Court, New York County, and which order, it is alleged, was defective on its face and afforded no proper basis for such detention and confinement.
The claimant was arrested in New York County on June 1, 1953, upon a charge of feloniously assaulting his wife with a pair of scissors. He was arraigned in Felony Court, and, on June 8, was committed to Bellevue Hospital for examination as to his mental condition. Claimant’s present counsel represented him during this time. It appears that the claimant was never indicted or otherwise prosecuted. Under date of June 19, 1953, the superintendent of the hospital petitioned the Supreme Court, New York County, upon the medical certificate of two certified *722 examiners who examined the claimant on June 19, 1953, and certified litm to be mentally ill, for an order adjudging him to be mentally ill and certifying him to a mental institution for care and treatment. The petition was made in accordance with title IV A of part VI of the Code of Criminal Procedure and pursuant to the Mental Hygiene Law (art. 5). Notice of the application was served on the claimant personally on June 22, 1953, and it was duly brought on at a Special Term of the Supreme Court, Part II, held at the courtroom located in Bellevue Hospital, New York County, on June 23 and thereafter adjourned from time to time to July 24, 1953, on which date an order was signed by Mr. Justice Thomas J. Beady adjudging the claimant to be mentally ill and certifying him to Rockland State Hospital pursuant to section 74 of the Mental Hygiene Law.
While the sanity of the claimant at the time of his commitment is not an issue herein and may not now be reviewed (Nastasi v. State of New York, 275 App. Div. 524, affd. 300 N. Y. 473) there was, nevertheless, evidence before the court that he was mentally ill and in need of care and treatment at the time of his commitment.
On September 28, 1953, claimant’s counsel, by order to show cause, initiated a review proceeding as provided for in section 76 of the Mental Hygiene Law, but, a jury trial was not had until December 9, 1953. The jury’s verdict was that the claimant was sane; it was returned on December 11, and the claimant was released.
The issue, posed on behalf of the claimant, is whether the order of commitment, ‘‘ was fatally defective on its face, constituting no warrant for the hospital authorities to receive or confine bim in that it recites it was made upon a medical examination dated June 19, 1953, more than 10 days before the date of the order, whereas subdivision 3 of section 70 of the Mental Hygiene Law provides that the examination upon which the order is made must be within 10 days before the granting of the order, and, in this respect, claimant points to the duty imposed upon the hospital authorities, pursuant to subdivision 8 of section 74, to refuse admission “ if the papers required to be presented shall not comply with the provisions of this section ”; the order is one of the papers referred to.
No issue is raised as to the jurisdiction, in the first instance, of the Supreme Court over subject matter and person — what is claimed is that the court acted beyond its jurisdiction in making the order and the hospital authorities should have known the limitations upon the court’s power and should not *723 have received the claimant. “ It is settled that one who arrests or restrains another may be liable for pursuing illegal or improper procedure as well as for acting upon an insufficient or improper basis” (Warner v. State of New York, 297 N. Y. 395, 400; see, also, Politano v. Jacoby, 240 App. Div. 733, affd. 263 N. Y. 573).
The order recites that it was made upon the petition referred to above, and, upon ‘ ‘ a medical certificate made by two certified examiners, which medical certificate is dated on the 19 day of Jun 1953 [sic] and which is annexed hereto, and upon such other facts and information as were produced before me ”. There is affixed to the face of the order, and, initialed by the Supreme Court Justice who signed the order, a mimeographed rider which was signed by the same medical examiners who made the prior examination, referred to in the petition, and they certified that on July 17, 1953, the claimant was examined again by them, his condition was found to be the same and he required care and treatment in a mental institution. This certificate recites that it was sworn to “ this 27 day of July, 1953 ” [sic]. From this, the claimant would argue that, obviously, the rider could not have been before the court three days earlier on July 24, and, therefore when the order was signed the only medical certificate that was before the court was the one of June 19, thus, the statute was not complied with. It is clear, however, that the rider was produced before the court on July 24, 1953, because it contains thereon the initials of the Justice presiding thereat and that it was one of the papers upon which he acted in granting the order. The mere omission to insert the proper day in the jurat is a “ mere formal error of a kind which will, as a rule, be disregarded” (Griffin v. Barton, 20 App. Div. 512, 513).
The order accompanied the claimant to the hospital and the authorities there were right in receiving and detaining him pursuant thereto because, upon its face, it appeared that the statute had been complied with.
This is not the case of Politano v. Jacoby (supra) where it was held that a Sheriff should have known that a Supreme Court Justice had no power to provide in an order that a husband, delinquent in the payment of alimony, should be committed to jail and detained in close custody until he had given bond for the future payment of alimony; or, the case of Troutman v. State of New York (273 App. Div. 619) where it was held that the State was liable in damages because the claimant was detained in Dannemora State Hospital pursuant to an order of the Clinton County Court which was made *724 without acquiring jurisdiction of the person in that a notice had not been given to him.
This is the case of Douglas v. State of New York (269 App. Div. 521, affd. 296 N. Y. 530) and Nastasi v. State of New York (275 App. Div. 524, supra) where, in each case, the process showed nothing on its face to indicate that it was not valid and recovery was denied. The process herein ‘1 is valid on its face — in which instance, the State and its agents would be protected ” (Warner v. State of New York, 297 N. Y. 395, 403, supra).
The admonition that “ There is no more sacred duty of a court than, in a case properly before it, to maintain unimpaired those securities for the personal rights of the individual which have received for ages the sanction of the jurist and the statesman” (Ex parte Lange, 85 U. S. 163, 178), has not gone unheeded here, but, it does not necessarily follow, in this case, that the jury verdict of the claimant’s sanity “ gives rise ipso facto to a claim for damages” against the State (Nastasi v. State of New York, supra, p. 525). The process pursuant to which the claimant was detained was fair on its face (Restatement, Torts, §§ 122-124), the commitment papers complied with the provisions of section 74 of the Mental Hygiene Law, and, the hospital authorities in admitting and detaining the claimant pursuant thereto did not subject the State to a suit for damages and the claim must be dismissed.
This constitutes the decision herein pursuant to section 440 of the Civil Practice Act.
Let judgment be entered accordingly.